# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE OPELOUSAS DIVISION

| | |
|---|---|
| **ADAM FRANK** <br> **DOC # 213548** | **CIVIL ACTION NO. 09-1184** |
| **VERSUS** | **JUDGE HAIK** |
| **WARDEN BURL CAIN** | **MAGISTRATE JUDGE HANNA** |

## REPORT AND RECOMMENDATION

Before the undersigned is pro se petitioner Adam Frank's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Rec. Doc. 1). Petitioner is an inmate in the custody of Louisiana's Department of Corrections, incarcerated at the Louisiana State Penitentiary at Angola, Louisiana. In the petition he attacks his 2004 conviction for armed robbery in Twenty Seventh Judicial District Court, St. Landry Parish, State of Louisiana. This matter has been referred to the undersigned for report and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE.**

### *Background*

Petitioner Adam Frank was charged by Bill of Information on March 19, 2003 of armed robbery in St. Landry Parish. (SCR 2257). He was found guilty by a jury on February 11, 2004. (SCR 2272). Frank was sentenced on February 22, 2005, to 65 years at hard labor without benefit of parole, probation, or suspension of sentence. (SCR 2805).

1

The background below is adopted from the Louisiana Third Circuit Court of Appeal decision which reported the facts elicited at trial as follows:

> On the night of January 15, 2003, Keisha LeBlanc, an employee of the Daiquiri Shop at J&M Express Mart in Opelousas, was robbed at gunpoint by a person wearing a camouflage jacket and a black ski mask. The gunman, later identified as Richard Reado, was aided in his endeavor by Defendant, the driver of the getaway car. Also present during the commission of the offense was Adam White, a co-defendant who testified at Defendant's trial. . . Keisha LeBlanc . . . testified that at 8:00 p.m. or later on January 15, 2003, "Texas" (Adam White) entered the store to use the restroom. Approximately two minutes after he left the store, another individual entered the store wearing a hooded camouflage jacket with a black ski mask. He was armed with a gun, and she complied with his demand for all the money in the cash register. Ms. LeBlanc testified she had seen the individual in the camouflage jacket with White outside the store before White entered the store to use the restroom.
> After waiting for a minute or two in the Daiquiri Shop, Ms. LeBlanc left and entered the adjoining convenience store to let another employee, Ms. Rose Dominique, know that they had been robbed. Ms. Dominique was on the phone with her sister-in-law whom she asked to contact police. Ms. Dominique also contacted police, and she and Ms. LeBlanc went outside and saw two people, who appeared to be adults, running down Compress Road. Store owner Mijid Mahmondi testified that he determined that approximately $1,600.00 had been taken from the register.
> At the time of the offense, Ms. Dominique's son, Gilford Jackson, lived at home with his mother on Harris Lane off Compress Road. Kevin Thomas, a friend of Gilford's, testified that he left Gilford's house that night at about 8:45, and he saw a vehicle traveling with no headlights on. He met up with the vehicle at the end of the road, and the vehicle turned in front of him. The vehicle was a brown Chevy Lumina with a mirror tint and no license plate. Kevin notified Gilford, who told his mother; Ms. Dominque then provided a description of the vehicle to police.
> Patrolman Anthony Griffin and Deputy Larry Williams received a bulletin to be on the lookout for a brown and tan Chevy Lumina with no plates. While en route to assist other officers at the scene of the robbery, they passed a vehicle matching that description stopped on the side of the road. Deputy Griffin turned his unit around, and they saw two people in the car "fumbling around." Deputy Griffin activated his overhead lights, and Deputy Williams approached the driver, Defendant, and asked why he was parked on the side

of the road. Defendant said he was talking to a friend on his cell phone. Deputy Griffin then stood in front of his unit with the driver while Deputy Williams went to speak to the passenger. As the passenger was retrieving his identification to show Deputy Williams, something fell out of his pocket, and Deputy Williams advised him that he was under arrest. At this point, Defendant was told that he, too, would be arrested, and he began resisting. He got away from the officers, entered his vehicle, and tried to leave. Deputy Williams fired a round in the back tire of the vehicle to disable it. A subsequent search of the vehicle revealed a pistol under the front seat armrest.

Four hundred seventy-seven dollars in cash was found on Defendant before he was taken from the scene in an ambulance. Later in the evening, several hundred dollars were found in the back seat of the police unit, where the passenger of Defendant's vehicle had been placed when he was arrested.

The passenger in Defendant's care was Adam Raymond White, Jr., who was the State's chief witness at trial. White testified that at the time of trial, he had pled guilty to armed robbery and was awaiting sentencing. He testified he had not been promised anything, including a reduced sentence, in exchange for his testimony, but he hoped his cooperation would result in a lesser sentence.

White testified that on January 15, 2003, between 10:30 and 11:30 a.m., while at his girlfriend's house, he received a page from Defendant. According to White, he had known Defendant for one and one-half to two months at that point. White returned the call, and Defendant told him he was going to stop by and pick him up, which he did at "a little past 11:00, 11:30." Defendant was driving a four-door gold Chevy Lumina with tinted windows and a paper license plate in the back windshield. The two stopped by Defendant's mother's house and his girlfriend's, Tesia Woods', house. Defendant then said they needed to stop by "Old School's" house. Upon arriving at "Old School's" house, both men got down and entered the residence. White later learned that "Old School" was Richard Reado. While at Reado's house, Reado and Defendant had a private conversation in the kitchen during which they spoke in "codes."

After about ten minutes, White and Defendant left the house in the same vehicle, accompanied by Reado. The trio proceeded to Compress Road, and by that time, White's pager had gone off again. He informed Defendant that it was his "little boy's mom" and he needed to use the phone. Defendant parked near the J&M station and White and Reado exited the car. White testified that Reado got on the payphone, and when White's attempts to get him off the phone were futile, White entered the Daiquiri Shop to use the restroom. When White exited the store, Reado was still on the phone.

3

According to White, Reado was wearing a hooded camouflage jacket and a black wool hat rolled up on his head that "kind of looked like" it had holes in it. White waited for Reado to finish his call, and then he got on the phone and dialed his little boy's mother's phone number. When asked if Reado said anything about going in to rob the store, White stated, "He said something about that he was going in there and get her. I never paid him no mind. I just told him, "Whatever you talking about, I'm not with that, or whatever your're talking about, I need to use the phone." White testified he felt the pressure of the door behind him opening and a short time later, Reado came back out and said, "Come on, let's go, I ain't gonna tell you no more!" According to White, Reado was nervous, and, at one point, when he reached into his pocket, White saw the handle of a gun. White hung up the phone, and they returned to the waiting car.

As the three men were driving away from the scene, Defendant asked Reado "Did everything go straight?" Reado indicated that everything went all right, but he did not trust White. According to White, it was clear to him, at this point, that Defendant knew what had occurred at the station, although Defendant had not mentioned robbing the J&M Express Mart during the time they had spent together that day.

The three men then went to Reado's house, and Reado and Defendant went into the house for eight to ten minutes while White remained in the car. Upon Defendant's return, he handed White a wad of money. White testified that he initially refused to take the money, but to avoid a confrontation with Defendant, he put it in his pocket. After he was arrested, he put the money in the back seat of the police car; he had not counted it.

As Defendant and White were headed back to Opelousas, they were stopped by police, and before being taken into custody, Defendant attempted to flee. After advising Defendant of his rights, Detective Roland Rivette questioned him about his involvement in the robbery. Defendant, in an unrecorded statement, indicated that he could not have committed the robbery, saying he was too tall. He said, "Look, if there's a video camera in there . . . Go look at it, you'll see I'm too tall."

Defendant also told Detective Rivette that the money found on his person had been given to him by a lady friend. A lady came to the station and told Detective Rivette that she had given Defendant the money. However, when she was advised she would have to give a written statement and possibly appear in court, she chose not to become involved.

On January 16, 2003, Steven Hidalgo with the St. Landry Parish Sheriff's Office conducted a search of the Reado residence and located the camouflage jacket and ski mask which Keisha LeBlanc identified as similar

4

to those she observed being worn by the perpetrator.

(SCR 1927 - 1934).

After exhausting his state court remedies,[1] Frank filed the present habeas corpus petition in this court alleging the following errors:

1) Ineffective Assistance of Counsel;

2) Violation of his Fourteenth and Sixth Amendment rights by the trial court's denial of his motion for a new trial;

3) Violation of his Fifth, Sixth, and Fourteenth Amendment rights by the failure of the trial court to instruct the jury on the burdens of proof for principal culpability and on accomplice testimony;

4) Insufficient evidence to support his conviction; and,

5) Prosecutorial misconduct by failing to correct false testimony of a State witness.

## *Law and Analysis*

*Standard of Review*

This petition was filed after the April 1996 effective date of the Anti-terrorism and Effective Death Penalty Act or AEDPA (Pub.L. No. 104-132, 100 Stat. 1214) and therefore federal *habeas corpus* review is governed by the provisions of the Act including those provisions codified at §2254(d)(1) and (2). Since the claims raised in Frank's petition for *habeas corpus* were adjudicated on the merits this Court must utilize

---

[1] The government agrees petitioner's application for federal habeas review is timely and all issues raised are procedurally exhausted. See *Respondent's Memorandum in Opposition to Petitioner's Application for Writ of Habeas Corpus* (Rec. Doc. 17-4), p. 5.

AEDPA's deferential standards for review codified at 28 U.S.C. § 2254(d)(1) and (2). "(U)nder the deferential standard of AEDPA, (federal courts) review only the state court's decision, not its reasoning or written opinion, to determine whether it is contrary to or a misapplication of clearly established federal law." *Catalan v. Cockrell*, 315 F .3d 491, 493 (5th Cir.2002), citing *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir.2002)(*en banc*). Under these provisions, *habeas* relief is not available unless the state courts' adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §§ 2254(d)(1) and (2).

Questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), while pure questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir.2000). The state court's decision is contrary to federal law within the meaning of § 2254(d)(1) if the state court applies a rule contradicting the governing law set forth in the Supreme Court's cases, or the state court "confronts a set of facts that are materially indistinguishable from a decision of (the Supreme) Court and nevertheless arrives at a result different from (Supreme Court) precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's factual findings constitute "an unreasonable application of clearly

6

established" Supreme Court precedent if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. The inquiry into the issue of "unreasonableness" is objective. *Id.* at 409-10. A state court's <u>incorrect</u> application of clearly established Supreme Court precedent is not enough to warrant federal *habeas* relief – the application must also be <u>unreasonable</u>. *Id.* at 410-12 (emphasis supplied).

The state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1). In order to obtain *habeas* relief on the ground that the state court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the petitioner must rebut by clear and convincing evidence the presumption that the state court's factual findings are correct. See *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir.2000).

1)      *Ineffective Assistance of Counsel*

The Sixth Amendment guarantees criminal defendants the "right to effective assistance of counsel at every critical stage of the proceedings against them."*Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001).

To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) that his attorney's representation was deficient because it fell below an objective standard of reasonableness; and (2) that the attorney's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052,

7

2064 (1984). See, also, *United States v. Franks*, 230 F.3d 811, 813 (5th Cir. 2000); *United States v. Garcia*, 77 F.3d 857, 859 (5th Cir. 1996). The defendant bears the burden of establishing both prongs of the test, and failure to establish either prong is fatal to the claim. *United States v. Franks*, 230 F.3d at 813; *Tucker v. Johnson*, 115 F.3d 276, 280 (5th Cir. 1997). The parts of the test need not be analyzed in any particular order, and there is no need to consider the remaining part once an insufficient showing has been made concerning the other one. *Goodwin v. Johnson*, 132 F.3d 162, 173 at n. 6 (5th Cir. 1998).

In analyzing the professional competence part of the test, judicial scrutiny of an attorney's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland v. Washington*, 466 U.S. at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. Additionally, the Constitution does not require an attorney to advance every conceivable argument, regardless of merit. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). Instead, counsel is required to raise only those issues that he believes, in the exercise of professional judgment, to have the best chance of success. See, e.g., *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). An attorney's failure to raise a legally meritless argument cannot support an ineffectiveness claim. *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). "Strategic choices made (by counsel) after thorough investigation of law and

facts relevant to plausible options are virtually unchallengeable." *St. Aubin v. Quarterman*, 470 F.3d 1096 (5th Cir. 2006). Similarly, a conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness. *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983).

Petitioner argues his counsel was ineffective by a) failing to prepare and adequately investigate prior to trial; b) failing to introduce an affidavit by co-defendant Reado; c) failing to have him testify in his own defense; d) failing to object to Detective Roland Rivette's being designated case agent and allowed to remain in the courtroom during the trial prior to testifying; and, e) failing to request a jury charge on accomplice testimony.

a)  Failure to prepare and adequately investigate prior to trial

Frank complains that his counsel failed to file motions on his behalf. However, as noted by respondent, counsel for the government and defendant's counsel entered into a joint stipulation for "open file discovery" where the need for motion practice is greatly reduced. (SCR 7, 17). In addition, Frank's counsel filed a motion to suppress. (SCR 257). Frank also complains that counsel did not interview a witness, Kevin Thomas, prior to trial. However, the witness was cross-examined at trial and Frank does not explain how he was prejudiced by counsel's failure to interview this witness prior to trial. Therefore, the undersigned finds counsel was not ineffective by failing to prepare and

investigate prior to trial.

b)      Failing to introduce an affidavit by co-defendant Reado;

Frank complains counsel did not introduce an affidavit by co-defendant Reado. In the affidavit, Reado attested that did not know Frank and had only met him for the first time at arraignment. As argued by respondent, Reado refused to testify and thus the affidavit was hearsay and did not meet any exception under La. C.E. arts. 803 or 804. (SCR 963). An attorney is not ineffective for failing to assert a legally meritless claim. See *United States v. Kimler,* 167 F.3d at 893. Therefore, counsel was not ineffective in failing to introduce Reado's affidavit into evidence at trial.

c)      Failing to have Frank testify in his own defense;

Frank also argues his counsel was ineffective because he did not call Frank to testify. However, Frank does not argue that he was not allowed to testify, and points to nothing in the record that indicates he was told by counsel he was forbidden from testifying or was compelled to remain silent. See *State v. Hampton,* 818 So.2d 720, 732 (La. 2002); *Passos-Paternina v. United States*, 12 F.Supp.2d 231 (D. Puerto Rico 1998). Frank did testify in the trial of his co-defendant Richard Reado, and was subsequently accused of perjury. (SCR 580) Whether a defendant testifies on his own behalf is a question of trial strategy and there is no evidence that the decision was "so ill chosen that it permeates the entire trial with obvious unfairness". *Garland v. Maggio*, 717 F.2d 206. Therefore, the undersigned finds counsel was not ineffective in not having Frank testify.

d) Failing to object to Detective Roland Rivette's being designated case agent and allowed to remain in the courtroom during the trial prior to testifying.

The case agent, Roland Rivette, was allowed to remain in the courtroom during the course of the trial prior to giving testimony. Pursuant to La. C.E. art. 615(B), a case agent is not subject to sequestration and Frank's attorney was not ineffective for failing to make a meritless objection to the case agent's remaining in the courtroom. In addition, petitioner does not show any evidence of prejudice by the case agent's being in the courtroom. Therefore, this argument is without merit.

e) Failing to request a jury charge on accomplice testimony.

Finally, counsel was not ineffective for failing to request a special jury charge on accomplice testimony. A special charge is required only when the State's case rests on accomplice testimony alone, but when the accomplice testimony is corroborated by other evidence, such a charge need not be given. See *State v. Washington*, 407 So.2d 1138, 1147 (La. 1981). In this case, Adam White's testimony was corroborated by the victim, by the investigating officers, and by witness Kevin Thomas. (SCR 776 - 970).

Moreover, a general charge was given that instructed the jury that it was their duty to determine the credibility of the witnesses and that they could weigh the testimony of a witness by, *inter alia,* considering a witness' interest in the case. (SCR 985). The jury was informed that witness Adam White was a co-defendant, that he had pled guilty to the charge of armed robbery, and that he hoped by testifying to have some time reduced from

11

his sentence. (SCR 826). Therefore, even if an accomplice jury charge could have been requested, Frank has failed to show prejudice by the failure to do so due to the general jury charge given.

For the reasons discussed above, the undersigned find counsel was not ineffective. Specifically, counsel's representation did not fall below any objective standard of reasonableness; alternatively, Frank has failed to show any prejudice from his counsel's representation. See *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Therefore, this argument is without merit.

2) *Violation of Fourteenth and Sixth Amendment rights by the trial court's denial of his motion for a new trial.*

The trial court denied Frank's motion for a new trial after a hearing. In the motion for new trial, Frank submitted affidavits and testimony of several persons who were all convicted felons and who were incarcerated with either Frank or his co-defendants Reado and White at some point in time. Basically, all of the affiants stated they heard White say that he was going to lie and falsely implicate Frank in the robbery. However, White testified under oath at the hearing that he did not make these statements to these people. (SCR 1031-1033). The trial judge accepted the affidavits and the individuals' testimony, and denied the motion, stating "there has not been very much to change my opinion with regards to this case." (SCR 1144). Thus, the trial judge determined that the new evidence would probably not have changed the verdict of guilty. See La. C.Cr.P. art. 858. The undersigned finds no violation of Frank's Fourteenth or Sixth Amendment rights in

12

the trial court's denial of Frank's motion for new trial.

3) *Violation of Fifth, Sixth, and Fourteenth Amendment rights by failure to instruct jury on the burdens of proof for principal culpability and on accomplice testimony.*

A review of the transcript shows the court did instruct the jury on the law of principals and the state's burden of proof. (SCR 984, 991). While no special instruction on accomplice testimony was given, it was not required in this case. As discussed above, the accomplice's testimony was corroborated; moreover, the court gave a general instruction that encompassed the complained of error when it charged the jury that it consider the interest of a witness in the case in determining the credibility of the witness' testimony. (SCR 985). The undersigned finds there was no failure to instruct the jury on the state's burden of proof and burden of proof for principal culpability and the jury was properly instructed regarding the testimony of accomplice Adam White. Therefore, the undersigned finds Frank's Fifth, Sixth, and Fourteenth Amendment rights were not violated and this claim is without merit.

4) *Insufficiency of the Evidence.*

Frank argues that the only evidence linking him to the crime was the uncorroborated testimony from White and that the victim, LeBlanc's, testimony conflicted with White's. Specifically, the LeBlanc testified they ran from the store on foot and the accomplice testified they drove away – therefore, the evidence was insufficient. This argument has no merit.

As discussed above, White's testimony was at least in part corroborated by the

13

victim, LeBlanc, the investigating officers, and the totality of the circumstances. The testimony given by LeBlanc was not the only testimony in the record bearing on the guilt of Frank. As noted in respondent's memorandum, Frank was found inside the vehicle described as the get away car. (SCR 869 - 873). He had approximately four hundred dollars on him. (SCR 879 - 887). He resisted arrest and tried to flee the scene and was stopped by an officer shooting out his car's back tire. (SCR 871 - 878). A loaded .38 revolver and several hundred dollars were found in the car. (SCR 879 - 887). The Louisiana Third Circuit Court of Appeal thoroughly reviewed the evidence in the case and found it sufficient to convict Frank as a principal to the armed robbery. (SCR 1934).

For the reasons given above, the undersigned finds the evidence was sufficient to convict Frank as principal to armed robbery; that is, a rational factfinder, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2788–99 (1979). This argument is without merit.

*5)      Prosecutorial misconduct by failing to correct false testimony of a State witness and failure to reveal a deal of leniency with a State witness.*

Frank argues the prosecutor, Donald Richard, allowed Adam White to testify falsely at trial. Specifically, White committed perjury by testifying that he did not receive a "deal" in exchange for testifying against Frank. The colloquy between Richard and White was as follows:

Q. Were you arrested on that date for the burglary – the armed robbery of

14

>the place of business known as J & M Mart?
>A. Yes, sir.
>Q. Did you plead guilty to that charge?
>A. Yes, sir.
>Q. Are you awaiting sentence:
>A. Yes, sir.
>Q. Have you been promised anything in regards if you testify in this case?
>A. No, sir.
>Q. Have you been told you would receive any kind of sentence on your – anybody would knock any time off your sentence or anything like that?
>A. No, sir.
>Q. Obviously, you hope they would do it?
>A. Yes, sir.
>Q. Okay, and that's why you cooperated?
>A. Yes, sir.
>Q. And you cooperated from the beginning?
>A. Yes, sir.

(SCR 826).

At the hearing on Frank's motion for new trial, Richard testified there were no negotiations between Richard and White and no deal made in exchange for his testimony. (SCR 1036). Richard testified there was a notation on the front of the file that the State would recommend leniency after White testified against Frank. (SCR 1037-1038). However, there is no evidence that any promise was made or that White had anything but a hope that his sentence would be reduced if he testified against his co-defendants. As pointed out by respondent in memorandum,[2] the Third Circuit's reasons for judgment on this issue on direct appeal are compelling:

---

[2]*Respondent's Memorandum in Opposition to Petitioner's Application for Writ of Habeas Corpus* (Rec. Doc. 17-4), p. 24.

> Although it appears the State intended to grant leniency to White if he testified at both co-defendants' trials as written on the cover of its file, it was not established that this was made known to White. Additionally, nothing in the evidence presented at the hearing on the motion for new trial suggests that White was untruthful in his testimony that no promises had been made to him that he cooperated in hopes of gaining leniency. While he admitted that he hoped for favorable treatment, there was no indication that he knew at trial that he would subsequently be allowed to withdraw his plea and plead to a lesser crime.

(SCR 1939 - 1940).

The undersigned finds there is no evidence in the record that White committed perjury when he testified that he was not offered any promise or deal in exchange for his testimony. Having made no false statement, prosecutor Richard was under no duty to correct same. Therefore, this ground for relief is without merit.

*Conclusion and Recommendation*

Petitioner has not shown that the Louisiana courts' resolution of petitioner's claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly,

**IT IS RECOMMENDED** that the petition for habeas corpus be **DENIED AND DISMISSED WITH PREJUDICE.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may

respond to another party's objections within fourteen days after being served, with a copy of any objections or response provided to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See, Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

Lafayette, Louisiana, this 20th day of May, 2011.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)